[L. A. No. 22111. In Bank. May 20, 1952.]

JOHN PANZICH et al., Appellants, v. HENRY C. GAY-LORD, Respondent.

Sinclair & Baker and J. M. Sinclair for Appellants.

Fleming, Robbins & Tinsman for Respondent.

GIBSON, C. J.—Plaintiffs brought this action to recover damages for defendant's alleged fraud in connection with the sale to them of a house and lot together with a garage which had been remodeled for use as a small dwelling. It was alleged that defendant falsely represented to plaintiffs that the small house could be rented for residential purposes, that he concealed the fact that no building permit had been obtained for its construction, that plaintiffs purchased the

property in reliance on defendant's representations, and that they were damaged as a result of the "fraudulent representations and concealments." The trial court, sitting without a jury, found for defendant, and the sole question to be determined on this appeal is whether the evidence supports the judgment.

In 1947, defendant obtained building permits to construct a house and garage, and both buildings were approved by the city inspector of Arcadia, where the property is located. At the time it was built the garage was wired for electricity and contained a bathroom, and later, in order to provide a dwelling for his sister and brother-in-law who could find no other place to live, defendant made certain alterations in the building. A partition was erected which divided it into two rooms in addition to the bathroom, one of the doors was sealed shut, and a screen porch was added. A sink was also installed, but the record is not clear whether this was done when the garage was built or when the alterations were made. No permit was obtained for the erection of the screen porch, and the record is silent as to whether one was secured for the other alterations.

Defendant listed the property for sale with a real estate agent who took plaintiffs to see the premises on October 21, 1948. The small house was then being occupied by defendant's sister and brother-in-law who were renting it for $35 a month. The agent told plaintiffs that the small house was rented and was producing an income of $35 a month. Plaintiffs orally agreed to buy the property on October 21, an escrow was opened on October 25, and the transaction completed on November 16.

Defendant's mother, Mrs. Gaylord, had conversations about the property with Mr. Panzich on two occasions. During the course of the first conversation, which occurred on the premises, she talked to Mr. Panzich about the relatives who lived in the small house and asked him "if it would be permissible for them to stay there until such time as they could locate a house they could afford," and she testified that "we told Mr. Panzich at the time the arrangements for Henry [defendant] to live in the garage when it was being built was —he was given permission to live there while the house was being built." Defendant testified that his mother told Mr. Panzich in his presence "that he had better check the legality of renting that garage to anyone except one of his own family," and that Panzich had replied, "The ordinance has

been changed. It is all right.'' The date of the conversation was not fixed with certainty, but there was evidence that Mr. Panzich was on the premises and discussed renting the small house with Mrs. Gaylord and other members of defendant's family on Sunday, October 24, and the trial court could infer from the evidence that all of the conversation detailed above took place on that day.

Mrs. Gaylord had the second conversation with Mr. Panzich about one week later. Defendant's sister and brother-in-law had vacated the small house, and Mr. Panzich told Mrs. Gaylord that he had another couple who wanted to rent the place. Mrs. Gaylord said, ''You can't do that, Mr. Panzich. You know you can't. We told you that when you were here a week ago that you could not do that. . . . The only reason that Henry [defendant] could rent that place was because it was his sister and it was just a war emergency. None of us really had the right to rent the place, particularly, but it was just because the kids did not have any place to live and he rented it to them. . . .'' Panzich replied, ''Oh yes we can. The ordinance has been changed.''

The only evidence in the record with regard to what plaintiffs knew about defendant's failure to obtain a permit for the erection of the screen porch was plaintiffs' testimony that they did not ''suspect'' or ''find out'' that alterations had been made without a permit until January, 1949, when a city inspector told them that they could not rent the small house. The inspector testified that he informed plaintiffs at that time that renting the building as a residence would be a violation of ''the zoning code'' and the Health and Safety Code. The witness did not specify in what respect renting the place would violate the Health and Safety Code, and there was no evidence before the trial court which would require a finding that the premises were unsafe or unfit for human habitation. There was evidence that the city inspector erred in stating that renting the small house as a residence would violate zoning restrictions. Relying upon the information obtained from the inspector, plaintiffs applied to the city planning commission for permission to rent the small house and requested that it approve the allowance of an exception from restrictions established by the zoning ordinance. After making an investigation, the commission reported on March 17, 1949, ''that there is no violation of zoning. . . .'' Thereafter, on March 31, 1949, plaintiffs filed this action.

The trial court found that the defendant did not mis-

represent or conceal any fact, that plaintiffs did not rely upon any representations made by defendant, and that they made their own investigation after having been advised that they should check to see whether they could rent the building to third persons as a dwelling unit. These findings are supported by the evidence.

The statement by the agent that the small house was rented for $35 was true. Any implication that the place would continue to produce an income was qualified by the warnings given plaintiffs on two separate occasions that there was some question about the right to rent the place as a dwelling and that they should ''check'' to see whether it could be rented to anyone other than a member of their family. There was evidence from which the court could find that the first of these warnings was given before the escrow was opened. Further, even if we assume that defendant was under a duty to disclose that no permit had been obtained for the erection of the screen porch, and that this was a material fact, we cannot say as a matter of law that the trial court was compelled to find that defendant concealed it. Plaintiffs' allegation of concealment was denied by defendant in his answer, and the trial court was not bound to accept plaintiffs' testimony that they did not learn until after the sale was completed that a permit had not been secured. Finally, there was ample evidence that plaintiffs were not induced to purchase the property in reliance on any of the alleged representations made by defendant or because of the alleged concealments. They made their own investigation and satisfied themselves that they had a right to rent the small house as a dwelling.

The judgment is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.